73 N.J. Super. 105 (1962)
179 A.2d 174
HELEN F. RIEDEL, PLAINTIFF,
v.
JAMES A. SHEERAN, MAYOR, AND COMMISSIONERS JAMES D. TOPPING, EDWARD W. ROOS, LOUIS P. FALCONE AND WALTER A. QUINN, CONSTITUTING THE BOARD OF COMMISSIONERS OF THE TOWN OF WEST ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; EMILE KARAM, TERRENCE J. MULVEY, WILLIAM J. STRAUB, S. HARRISON ROLLINSON AND ALBERT H. BLAZE, CONSTITUTING THE BOARD OF ADJUSTMENT (ZONING) OF THE TOWN OF WEST ORANGE; ANDREW LEOSK, BUILDING INSPECTOR OF THE TOWN OF WEST ORANGE; ESSO STANDARD, DIVISION OF HUMBLE OIL AND REFINING COMPANY, A CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY AND MARIE EDELHAUSER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 8, 1962.
*107 Mr. Frank A. LaMorte for plaintiff (Messrs. Marzulli, Beninati & LaMorte, attorneys).
Mr. Arnold M. Smith, attorney for defendant Esso Standard, Division of Humble Oil and Refining Company.
GIULIANO, J.S.C.
This is a motion by Esso Standard, Division of Humble Oil and Refining Company, to dismiss certain portions of the complaint in an action in lieu of prerogative writs. For purposes of this motion the following factual statement is necessary.
Marie Edelhauser, one of the named defendants in this action, owns property at Prospect Street in West Orange, New Jersey. A gasoline station had been located on this property since a date prior to April 1932. In February 1960 there was a fire at the gasoline station on the Edelhauser land. In November 1960 Marie Edelhauser leased the premises to defendant Esso Standard. One month later Esso Standard made application to defendant Andrew Leosk, Building Inspector of the Town of West Orange, for a permit to erect a gasoline station on the Edelhauser property. The application was denied on the ground that a gasoline station constitutes a special exception in the district (Zone B) in which the property is located. Pursuant to section 11-C 6 (f) of West Orange Zoning Ordinance of 1954 (as amended December 6, 1960) an applicant for a special exception must first obtain a recommendation of approval by the board of adjustment and the subsequent approval of *108 that recommendation by the board of commissioners before a building permit can be issued. Esso Standard appealed to the board of adjustment from the decision of the building inspector. After a hearing on January 10, 1961 the board of adjustment recommended to the board of commissioners that the request for a special exception be approved. On March 21, 1961 the board of commissioners by resolution approved the recommendation of the board of adjustment and granted the special exception.
On April 16, 1961 Esso Standard made application to the board of commissioners for a gasoline service station operating license pursuant to chapter 6 of the Revised Ordinances of the Town of West Orange. This license was granted on July 21, 1961, whereas the building permit had been issued on June 9, 1961.
Helen F. Riedel, the plaintiff in this action, owns property within 200 feet of the land owned by defendant Marie Edelhauser. In her complaint plaintiff admits that she had due and legal notice of the hearing before the board of adjustment on the application of Esso Standard and alleges, although the minutes of the hearing do not so indicate, that she recorded her objections at the hearing. In her complaint plaintiff demands that the court set aside the board of adjustment's recommendation and the board of commissioners' approval of the special exception, the building inspector's issuance of the building permit and the board of commissioners' grant of the operating license. Defendant Esso Standard now moves to dismiss those portions of the complaint dealing with the approval of the special exception.
Defendant relies on R.R. 4:88-15(b)(3) which provides:

"* * * * * * * *
(b) No proceeding in lieu of prerogative writs shall be commenced

* * * * * * * *
(3) to review any determination of a planning board or board of adjustment, or any resolution by the governing body or board of public works of a municipality approving or disapproving a recommendation made by the planning board or board of adjustment, after 45 days from the publication of a notice once in the official newspaper *109 of the municipality or a newspaper of general circulation in the municipality; * * *."
The record discloses that there has never been publication of a notice in either the official newspaper of the municipality or of a newspaper of general circulation in the municipality. However, defendant attached to its motion a certified copy of a letter which was written by plaintiff on March 30, 1961, addressed to the Mayor and Board of Commissioners of West Orange. In this letter plaintiff urged the board to reconsider its decision of March 21, 1961 approving the special exception. Plaintiff has admitted in her brief that she had actual notice not later than March 30, 1961. Defendant contends that plaintiff's actual notice of the board of commissioners' approval of the special exception started the 45 day time period running. Therefore, since plaintiff had actual notice by March 30, 1961, the 45-day time period within which an in lieu proceeding could be commenced would have expired in May of 1961. If defendant's contention is correct, plaintiff is out of time as to those portions of the complaint dealing with the board of commissioners' approval of the special exception on March 21, 1961, since her complaint was filed on August 2, 1961.
Plaintiff contends that when the board of adjustment's recommendation approving the special exception use was approved by the March 21, 1961 resolution of the board of commissioners, it was conditioned upon Esso Standard's compliance with chapter 6 of the Revised Ordinances of West Orange. Therefore, the argument is made that until Esso Standard applied for and obtained an operating license after having generally complied with chapter 6, plaintiff had no right to complain. The conclusion of this argument is that any action brought prior to July 12, 1961 (the date the board of commissioners issued the operating license to Esso Standard) would have been premature.
The argument set out in the preceding paragraph will be examined first, for if it is accepted by this court, the *110 question of the effect of actual notice when the constructive notice provision of R.R. 4:88-15(b) (3) has not been complied with would be moot.

I.
Plaintiff claims that in order to determine when she was aggrieved, for purposes of reviewing the alleged wrongful actions of the governing body, those sections of the West Orange zoning ordinance dealing, with special exception use, and chapter 6 of the Revised Ordinances, which deals specifically with filling stations, must be read together.
Going one step further, plaintiff argues that it is the operation of the proposed gasoline station which will cause her injury. Therefore, because Esso Standard could neither comply with the condition contained in the approval of the special exception nor could it operate a gasoline station without first having complied with chapter 6, it was not until the provisions of that chapter were complied with (as manifested by the issuance of an operating license to Esso Standard on July 12, 1961) that plaintiff's right to a review accrued.
Where alleged wrongful governmental action has a number of overt manifestations, which of them mature the right to review? This was one of the questions answered in Marini v. Borough of Wanaque, 37 N.J. Super. 32 (App. Div. 1955). In the Marini case the plaintiff complained that the building inspector had illegally issued a building permit, and that after completion of the work done pursuant to the permit wrongfully issued a certificate of occupancy. A reading of the case indicates that if the plaintiff's right had accrued when the building permit issued, the action was barred by R.R. 4:88-15(a). To meet the problem the plaintiff there argued that the action was also brought to review the issuance of the certificate of occupancy, and that it was this last act which created the cause of action. Judge Conford speaking for the court, said at pages 39, 40:
*111 "Can the action nevertheless stand free of the limitation period, as asserted, in its aspect of a review of the legality of the issuance of the certificate of occupancy? We think not. The gravamen of the grievance here asserted was the allegedly wrongful permission for conversion of the building. Its subsequent use in converted form was a clearly foreseeable consequence of the official permission to do the work and so too, therefore, was the issuance of the certificate. There is no suggestion that the work done was other than as authorized by the permit. The cause of action is integral. To permit a new period of limitations to run with the issuance of the certificate would, in effect, split the cause of action and evade the policy of the provision for limitations. Boulevard Improvement Company v. Academy Associates, Inc., 3 N.J. Super. 506 (Law Div. 1949); cf. Board of Education of Borough of Fort Lee v. Mayor, etc., of Fort Lee, 31 N.J. Super. 22 (App. Div. 1954). We do not imply that there are no other sanctions against a wrongful issuance of a certificate of occupancy. We are here concerned only with the impact of R.R. 4:88-15 in the peculiar circumstances here presented."
Boulevard Improvement Co. v. Academy Associates, Inc., 3 N.J. Super. 506 (Law Div. 1949), cited in the Marini decision, involved a similar claim. In that case the plaintiff brought an in lieu proceeding to review the governing body's grant of a variance. The plaintiff demanded that the action of the board of adjustment in recommending the variance and the approval of the board of commissioners be set aside. The plaintiff also demanded that the building permit be revoked. As in the Marini case, the facts show that the plaintiff was out of time if its cause of action accrued from the board of commissioners' approval of the variance. Judge (now Justice) Proctor, after declaring that the issuance of the building permit was a mere administrative function performed by one acting in a ministerial capacity only, said at page 511:
"Plaintiffs' right to review, hearing and relief as to the recommendation of the board of adjustment together with the resolution of the board of commissioners became enforceable, i.e., there was `the accrual of the right,' when the board of commissioners adopted the resolution."
In both the Marini and the Boulevard Improvement Co. cases the plaintiffs' contention was that the right to review *112 arose upon the last of a series of alleged wrongful governmental acts. The act referred to in each case was performed by an official acting in a ministerial capacity. In the instant case, the board of commissioners acting pursuant to chapter 6 of the Revised Ordinances of the Town of West Orange is invested with discretionary power and does not serve a purely ministerial function. The provisions of this chapter are such that it would be possible for the board of commissioners to deny an operating license even though the applicant had previously obtained zoning approval and had conformed with the minimum requirements of chapter 6 itself. This is due to the fact that chapter 6 contains a provision (6-9(i)) which provides:
"* * *
The foregoing restrictions shall be considered minimum requirements. Nothing herein contained shall be deemed to require the board of commissioners to grant such license upon conformity of an application with such restrictions where, in its judgment, the granting of such application would be inimical to the health, safety or welfare of the public, or injurious to the value of the property within the vicinity of the proposed filling station. (Ord. 4-12-32, § 9; 1-20-41, § 1.)"
The first question which this court must decide then is: does a resolution by the governing body of a municipality approving a board of adjustment's recommendation which is conditioned upon compliance with another local act vesting discretionary power in the body administrating it, toll the accrual of the right to a review and the limiting period prescribed by R.R. 4:88-15(b) (3)? For the following reasons this court holds that it does not.
When a planning board or a board of adjustment acts in a recommendatory capacity, the governing body by resolution approves or disapproves the recommendation made to it. The provisions of R.R. 4:88-15(b)(3) are explicit in that it is the approving or disapproving resolution by the governing body which creates a right of review by a proceeding in lieu of prerogative writ. In this case the *113 recommendation of the Board of Adjustment of West Orange contained a number of conditions, one of which was compliance with chapter 6. It is generally the rule rather than the exception that the recommendation of a board of adjustment or a planning board will contain conditions with which the applicant must comply. These conditions generally refer to setback lines, buffer zones, grading and other zoning features, although they may, as in this case, refer to a non-zoning feature, such as licensing. Whether or not the applicant complies with all of the conditions imposed upon him can in no way alter the right of review which arose when the governing body approved the conditioned recommendation.
It makes no difference, therefore, whether or not the conditions which must be complied with are subject to purely ministerial administration, as in the Marini and Boulevard Improvement Co. cases, supra, or are subject to discretionary powers such as may be exercised by the governing body in the instant case. In each situation a right of review accrues by force of the rule when the governing body by resolution approves the recommendation of the board of adjustment. Once the right accrues it is subject to the limitations which are imposed upon its vindication.
If the governing body's issuance of an operating license pursuant to chapter 6 of the Revised Ordinance was legally unwarranted, that action was certainly remediable by a proceeding in lieu of prerogative writ. However, the limitation upon the bringing of an action in lieu of prerogative writs differs with respect to the type of act for which a review is sought. The right to review the alleged wrongful issuance of the operating permit is governed by R.R. 4:88-15(a), whereas a review of the governing body's approving resolution is controlled by R.R. 4:88-15(b)(3).
The fact that the consequences of the later governmental action in this case were more harmful to the plaintiff is not controlling. Cf. Public Service Railway Co. v. *114 Camden, 95 N.J.L. 190 (E. & A. 1920). In Tortorello v. Reinfeld, 6 N.J. 58 (1950), our Supreme Court, in construing the meaning of the term "accrual of a cause of action" under R.S. 2:24-2 (now N.J.S. 2A:14-2), said, at page 65:
"Any wrongful act or omission resulting in any injury to the person, though slight, for which the law provides a remedy gives rise to a right to institute an action therefor and the cause of action is said to accrue at that time."
While we are not here dealing with the personal injury statute of limitations, the situation is analogous. The wrong for which R.R. 4:88-15(b) (3) here provides a remedy is the governing body's resolution of March 21, 1961 which it is alleged wrongfully approved the board of adjustment's recommendation.
Regardless of the manner in which the governing body acted on March 21, 1961, plaintiff's right to a review accrued on that date by force of the rule in the same way a cause of action would have accrued had she been injured in a manner contemplated by the personal injury statute of limitations. The limitation upon the bringing of an action to enforce the right which in this case is remediable by R.R. 4:88-15(b) (3), is set out in the rule itself. Nothing in the rule can be found which indicates to this court that the 45-day limiting period there provided should run from the time full compliance is made with conditions which may be contained in a recommendation approved by the governing body. This court will not now read such a provision into the rule.

II.
For the reasons given in Part I of this opinion, this court has concluded that July 12, 1961 (the day the operating license was issued to Esso Standard) was not the date from which the 45 day limitation period began running with *115 reference to a review of the governing body's approving resolution of March 21, 1961.
While it was on March 21, 1961 that plaintiff's right to a review of the governing body's approving resolution accrued, R.R. 4:88-15(b) (3) does not provide that the period of limitation begins to run from the accrual of the right. It is unlike R.R. 4:88-15(a) which expressly provides that no in lieu proceeding shall be commenced "unless it shall be commenced within 45 days of the accrual of the right to such review, hearing or relief, except as provided in paragraph (b) of this rule, and except as provided in Rule 1:3-1." (Emphasis added) R.R. 4:88-15(b) (3) provides that no in lieu proceeding shall be commenced to review a resolution by the governing body approving a board of adjustment's recommendation "after 45 days from the publication of a notice once in the official newspaper of the municipality or a newspaper of general circulation in the municipality." A cursory reading of the foregoing provision of R.R. 4:88-15(b) (3) would lead one to believe that the 45-day limitation period cannot begin to run until the constructive notice provision of the rule has been complied with.
It was stated earlier in this opinion that the record discloses the fact that the constructive notice provision of R.R. 4:88-15(b)(3) has not, in this case, been complied with by the municipal governing body. It was also stated that plaintiff had actual knowledge of the governing body's approving resolution by March 30, 1961 at the latest. The complaint was filed by plaintiff on August 2, 1961. Therefore, if defendant is correct in that plaintiff's actual notice of March 30, 1961 started the 45 day limitation period running, it follows that those portions of the complaint dealing with a review of the special exception approval are barred by the rule. On the other hand, if defendant is incorrect and it is held that the municipality's failure to provide constructive notice tolled the limiting period regardless of plaintiff's actual notice, all of the allegations *116 set forth in the complaint are timely and a review may be had thereon.
The question this court must decide may be posed in the following manner: Did the fact that plaintiff had actual notice on March 30, 1961 of the governmental act which caused the accrual of her right to a review pursuant to R.R. 4:88-15(b) (3), start the running of the 45 day limiting period provided therein, even though the constructive notice provision of the rule has not been complied with?
Although this question was raised by plaintiff in her brief, it was treated in a summary fashion. Defendant, on the other hand, briefed the question adequately and has put forth a convincing argument. Both parties, however, were handicapped by the fact that this question has not yet been passed upon by our courts.
There are two cases which seem to hold that where the constructive notice provision of R.R. 4:88-15(b) (3) has not been complied with, the limiting period provided by the rule cannot be a bar to an action brought thereafter. A closer reading of both cases, however, shows that this statement of the holding in each case is much too broad. In Esso Standard Oil Co. v. Northfield, 41 N.J. Super. 105 (Law Div. 1956), the court held that the board of adjustment's failure to comply with the constructive notice provision of R.R. 4:88-15(b)(3) as amended June 27, 1955, prevented the limiting period of the rule from barring plaintiff's action although it was instituted more than four months after the accrual of the right to a review. An examination of the facts of that case shows that there was no proof before the court that the plaintiff had actual notice at any time prior to the date the complaint was filed. The court said, at page 107:
* * * "Plaintiff was not given notice of the action of the board of adjustment, and in particular the meeting of December 19, 1955 [the date of the board's decision]." *117 and at page 108:
"Counsel for defendant argues that the plaintiff could have learned of the action taken, but this cannot prevail. The rule does not impose any obligation on the plaintiff, but does make certain demands on defendant board of adjustment which it failed to perform." (Emphasis added)
In the second of the two cases alluded to, an action instituted on August 20, 1957 was held not to be barred by the limiting period of R.R. 4:88-15(b) (3) although the right of review had accrued on April 5, 1957. Donovan v. New Brunswick, 50 N.J. Super. 102 (Law Div. 1958). The basis of the court's holding is set out briefly on page 106 as follows:
"* * * The documentary proof produced herein does not reveal any publication as prescribed by the rule, [R.R. 4:88-15(b) (3)], and therefore the court concludes that this complaint is not barred."
Here, again, an examination of the facts shows that the plaintiffs did not have any knowledge of the act which accrued their right to a review until one day before the complaint was filed. The court said, at page 104:
"The minutes of the city planning board disclose that at a special meeting of the planning board held in the city hall of New Brunswick on April 5, 1957, an application by McCourt for a minor subdivision was approved. These plaintiffs became apprised of the action taken by the planning board on August 19, 1957 * * *." (Emphasis added)
It can readily be seen that as distinguished above the last two cited cases are not dispositive of the question yet to be decided in this action.
The fact remains, however, that in the Esso Standard Oil and Donovan cases, supra, the actions were permitted to be brought even though there had never been compliance by the municipality with the constructive notice provision of the rule. This points up the fact that the publishing *118 of a notice as provided by the rule is not the act which accrues the right to a review. If it was, the complaint in both of the above cases would certainly have been premature. It is obvious that in a situation where no publication has been made pursuant to the rule, the only way a person would ever be in a position to complain of the facts which brought about the right to a review, is by actually having notice of those facts. Once actual notice is given it is clear that one does not have to wait until the municipal body decides to comply with the rule before an action can be brought. Cf. Donovan v. New Brunswick, 50 N.J. Super. 102 (Law Div. 1958); Esso Standard Oil Co. v. Northfield, 41 N.J. Super. 105 (Law Div. 1956).
If an action can be brought without publication ever having been made pursuant to the rule, what purpose does the provision for publication serve? Its primary purpose is to afford the most effective notice to all persons who may be aggrieved by the determination in question so that they might then seek appropriate relief. The secondary purpose is to make certain that the period within which relief must be sought (which normally runs from the accrual of the right) is not shortened or eliminated as to persons who never had knowledge of the accrual of the right. As to those persons who first attain notice by virtue of the publication, the rule sets the outside limitation on the right to a review.
Actual notice has always been regarded as superior to constructive notice, such as that given by publication. Having had more perfect notice than was required by the rule, plaintiff was not harmed or in any way burdened by the failure of the governing body to make publication as required. Since persons receiving constructive notice by publication must bring an in lieu proceeding no later than 45 days from the date of publication, it follows logically that a person having actual notice must commence his action within 45 days from the time the actual notice was received. This interpretation not only preserves the rights of an *119 aggrieved person to a review but also protects the favored party against having to wait an unreasonable time before being free to act in reliance on the governing body's determination.
This court finds that plaintiff's actual notice on March 30, 1961 of the governing body's approving resolution of March 21, 1961 started the 45 day period of limitation in R.R. 4:88-15(b)(3) running. Therefore, it is the holding of this court that those portions of the complaint filed on August 2, 1961 which deal with a review of the board of commissioners' resolution approving the board of adjustment's recommendation of Esso Standard's special exception application, and the building inspector's subsequent issuance of a building permit pursuant to the resolution, are barred by the rule and are dismissed.
The alleged illegality of the board of commissioners' issuance of the operating permit to Esso Standard on July 21, 1961 was not set out by a separate count in the complaint. However, the complaint indicates, and the defendants so understood, that a review of the legality of that act was being sought. Since the complaint was filed on August 2, 1961, a review of the July 12, 1961 action taken by the board of commissioners is not barred. The only issue left for the determination of the trial court is whether or not the gasoline station operating license issued to Esso Standard by the Board of Commissioners was legally warranted.
An appropriate order may be submitted.